IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| EDDIE L. STOKES,[1]      ) | |
|     Plaintiff,     ) | |
|                     ) | |
| v.                       ) | CIVIL ACTION NO. 14-00559-N |
|                     ) | |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner of Social Security, ) | |
|     Defendant.     ) | |

## MEMORANDUM OPINION AND ORDER

Social Security Claimant/Plaintiff Eddie L. Stokes has brought this action under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Defendant Commissioner of Social Security ("the Commissioner") denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq*.  By the consent of the parties (*see* Doc. 19), the Court has designated the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in this civil action, in accordance with 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and S.D. Ala. GenLR 73.  (*See* Doc. 22).

Upon consideration of the parties' briefs (Docs. 12, 15) and the administrative record (Doc. 11) (hereinafter cited as "(R. [page number(s) in lower-right corner of transcript])"), and with the benefit of oral argument held October 27, 2015, the Court finds that the Commissioner's decision is due to be **AFFIRMED**.

### I.   Background

On August 3, 2011, Stokes filed an application for DIB with the Social Security

---

[1] Though the Plaintiff's name was docketed as "Eddie L. Strokes," the record indicates that his last name lacks an "r" and is in fact "Stokes."  The Clerk of Court is **DIRECTED** to correct the Plaintiff's name on the docket accordingly.

Administration ("SSA"),[2] alleging disability beginning June 30, 2005.[3]  (R. 100).  After his application was initially denied, Stokes requested a hearing, which was held before an Administrative Law Judge ("ALJ") for the SSA on August 2, 2013.  (R. 100).  On August 30, 2013, the ALJ issued an unfavorable decision on Stokes's applications, finding him "not disabled" under the Social Security Act.  (*See* R. 97 – 108).

Stokes requested review of the ALJ's decision by the Appeals Council for the SSA's Office of Disability Adjudication and Review, submitting additional evidence for the Appeals Council's consideration.  The Commissioner's decision on Stokes's application became final when the Appeals Council denied Stokes's request for review on October 31, 2014.  (R. 1 – 5).  On December 2, 2014, Stokes filed this action under § 405(g) for judicial review of the Commissioner's final decision. (Doc. 1).  *See* 42 U.S.C. § 405(g) ("Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow."); *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1262 (11th Cir. 2007) ("The settled law of this Circuit is that a court may review, under sentence four of section 405(g), a denial of review by the Appeals Council.").

---

[2] "The Social Security Act's general disability insurance benefits program ('DIB') provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence. *See* 42 U.S.C. 423(a)."  *Sanders v. Astrue*, Civil Action No. 11-0491-N, 2012 WL 4497733, at *3 (S.D. Ala. Sept. 28, 2012).

[3] "For DIB claims, a claimant is eligible for benefits where she demonstrates disability on or before the last date for which she were insured.  42 U.S.C. § 423(a)(1)(A) (2005)." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam).

## II.     Standard of Review

"In Social Security appeals, [the Court] must determine whether the Commissioner's decision is ' "supported by substantial evidence and based on proper legal standards.  Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." ' " *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quoting *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (per curiam) (internal citation omitted) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997))).  However, the Court " 'may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].' " *Winschel*, 631 F.3d at 1178 (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (alteration in original) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983))).  " 'Even if the evidence preponderates against the [Commissioner]'s factual findings, we must affirm if the decision reached is supported by substantial evidence.' " *Ingram*, 496 F.3d at 1260 (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

"Yet, within this narrowly circumscribed role, [courts] do not act as automatons.  [The court] must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence[.]" *Bloodsworth*, 703 F.2d at 1239 (citations and quotation omitted).  "In determining whether substantial evidence exists, [a court] must…tak[e] into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  Moreover, "[t]here is no presumption…that the Commissioner followed the appropriate legal standards in deciding a claim for benefits or that the

legal conclusions reached were valid. Instead, [the court] conduct[s] 'an exacting examination' of these factors." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam) (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)) (internal citation omitted). In sum, courts "review the Commissioner's factual findings with deference and the Commissioner's legal conclusions with close scrutiny." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). *See also Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam) ("In Social Security appeals, we review *de novo* the legal principles upon which the Commissioner's decision is based. *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). However, we review the resulting decision only to determine whether it is supported by substantial evidence. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004)."). " 'The [Commissioner]'s failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal.' " *Ingram*, 496 F.3d at 1260 (quoting *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991)).

> Eligibility for DIB … requires that the claimant be disabled. 42 U.S.C. §§ 423(a)(1)(E) … A claimant is disabled if she is unable "to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment ... which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) …

*Thornton v. Comm'r, Soc. Sec. Admin.*, 597 F. App'x 604, 609 (11th Cir. Feb. 11, 2015) (per curiam) (unpublished).[4]

---

[4] In this Circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2 (effective Dec. 1, 2014). *See also Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 n.1 (11th Cir. 2015) (per curiam) ("Cases printed in the Federal Appendix are cited as persuasive authority.").

> The Social Security Regulations outline a five-step, sequential evaluation process used to determine whether a claimant is disabled: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel*, 631 F.3d at 1178 (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *Phillips*, 357 F.3d at 1237-39).[5]

"These regulations place a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work." *Moore*, 405 F.3d at 1211 (citing *Spencer v. Heckler*, 765 F.2d 1090, 1093 (11th Cir. 1985)). "In determining whether the claimant has satisfied this initial burden, the examiner must consider four factors: (1) objective medical facts or clinical findings; (2) the diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education, and work history." *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986) (per curiam) (citing *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983) (per curiam)). "These factors must be considered both singly and in combination. Presence or absence of a single factor is not, in itself, conclusive." *Bloodsworth*, 703 F.2d at 1240 (citations omitted).

If, in Steps One through Four of the five-step evaluation, a claimant proves that he or she has a qualifying disability and cannot do his or her past relevant work, it then becomes the Commissioner's burden, at Step Five, to prove that the claimant is

---

[5] The Court will hereinafter use "Step One," "Step Two," etc. when referencing individual steps of this five-step sequential evaluation.

capable—given his or her age, education, and work history—of engaging in another kind of substantial gainful employment that exists in the national economy. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985). Finally, but importantly, although the "claimant bears the burden of demonstrating the inability to return to [his or] her past relevant work, the Commissioner of Social Security has an obligation to develop a full and fair record." *Shnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987). "This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts. In determining whether a claimant is disabled, the ALJ must consider the evidence as a whole." *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (per curiam) (citation and quotation omitted).

"When no new evidence is presented to the Appeals Council and it denies review, then the administrative law judge's decision is necessarily reviewed as the final decision of the Commissioner, but when a claimant properly presents new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous." *Ingram*, 496 F.3d at 1262.

### III.   Claims on Judicial Review

1. The ALJ reversibly erred "in acting as both judge and physician by arbitrarily substituting his own medical opinion, without any supporting medical opinions or substantial evidence, for the opinion of a medical professional…"

2. The ALJ "reversibly erred in violation of Social Security Ruling 96-8p in finding that [Stokes] would have the residual functional capacity to perform medium work except with occasional postural and manipulative limitations and must

also avoid dangerous hazards, machinery, and heights … Under Social Security Ruling 86-8p, the Administrative Law Judge, in delineating a Plaintiff's residual functional capacity, is required to state a function-by-function assessment of the Plaintiff's ability to do postural and manipulative activities."

(Doc. 12 at 1 – 2).

## IV.     Analysis

At Step One, the ALJ determined that Stokes "did not engage in substantial gainful activity during the period from his alleged onset date of June 30, 2005 through his date last insured of December 31, 2006…" (R. 102). At Step Two, the ALJ determined that Stokes had the following severe impairments through his date last insured: cervical disc disease status post fusion surgery at C5-7, and lumbar degenerative disc disease. (R. 102). At Step Three, the ALJ found that Stokes did not have an impairment or combination of impairments that meets or equals the severity of one of the specified impairments in the Listing of Impairments. (R. 37 – 38).

At Step Four,

> the ALJ must assess: (1) the claimant's residual functional capacity ("RFC"); and (2) the claimant's ability to return to her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). As for the claimant's RFC, the regulations define RFC as that which an individual is still able to do despite the limitations caused by his or her impairments. 20 C.F.R. § 404.1545(a). Moreover, the ALJ will "assess and make a finding about [the claimant's] residual functional capacity based on all the relevant medical and other evidence" in the case. 20 C.F.R. § 404.1520(e). Furthermore, the RFC determination is used both to determine whether the claimant: (1) can return to her past relevant work under the fourth step; and (2) can adjust to other work under the fifth step…20 C.F.R. § 404.1520(e).
>
> If the claimant can return to her past relevant work, the ALJ will conclude that the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv) & (f). If the claimant cannot return to her past relevant work, the ALJ moves on to step five.

7

> In determining whether [a claimant] can return to her past relevant work, the ALJ must determine the claimant's RFC using all relevant medical and other evidence in the case. 20 C.F.R. § 404.1520(e). That is, the ALJ must determine if the claimant is limited to a particular work level. *See* 20 C.F.R. § 404.1567. Once the ALJ assesses the claimant's RFC and determines that the claimant cannot return to her prior relevant work, the ALJ moves on to the fifth, and final, step.

*Phillips*, 357 F.3d at 1238-39 (footnote omitted).

The ALJ determined that Stokes had the RFC "to perform medium work as defined in 20 CFR 404.1567(c)[6] except that [he] has occasional postural and manipulative limitations [and] also must avoid dangerous hazards, machinery, and heights." (R. 103). Based on this RFC, the ALJ determined that Stokes "was capable of performing past relevant work as a welder/fitter…" (R. 105). Alternatively, the ALJ, proceeded to Step Five, determined that there existed significant numbers of jobs in the national economy that Stokes could perform (R. 106 – 107). Thus, the ALJ found that Stokes was not disabled under the Social Security Act. (R. 107).

---

[6] "To determine the physical exertion requirements of different types of employment in the national economy, the Commissioner classifies jobs as sedentary, light, medium, heavy, and very heavy. These terms are all defined in the regulations … Each classification …has its own set of criteria." *Phillips*, 357 F.3d at 1239 n.4. "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, … he or she can also do sedentary and light work." 20 C.F.R. § 404.1567(c). "A full range of medium work requires standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday in order to meet the requirements of frequent lifting or carrying objects weighing up to 25 pounds. As in light work, sitting may occur intermittently during the remaining time. Use of the arms and hands is necessary to grasp, hold, and turn objects, as opposed to the finer activities in much sedentary work, which require precision use of the fingers as well as use of the hands and arms. []The considerable lifting required for the full range of medium work usually requires frequent bending-stooping (Stooping is a type of bending in which a person bends his or her body downward and forward by bending the spine at the waist.) Flexibility of the knees as well as the torso is important for this activity. (Crouching is bending both the legs and spine in order to bend the body downward and forward.)" Social Security Ruling 83-10 (Jan. 1, 1983).

### A.    Claim 1

Stokes claims that the ALJ "was without substantial evidence to support the … RFC … and substituted his own medical opinion for the opinion of a medical professional[,]" as "[o]ther than the opinion of [non-examining state agency physician] Dr. Hayne and [workmen's compensation physician] Dr. Schnitzer, the [ALJ] cited no further medical evidence to support his finding." (Doc. 12 at 3 – 5). The assertion that the ALJ "cited no further medical evidence" other than the opinions of Dr. Hayne and Dr. Schnitzer is demonstrably incorrect. In addition to those opinions, the ALJ's decision at Step Four summarized the objective record medical evidence and Stokes's subjective allegations and testimony. (*See* R. 104 – 105). The assertion that the ALJ "substituted his own medical opinion for the opinion of a medical professional" is also demonstrably incorrect, as the ALJ assigned significant weight to the opinion of treating source Dr. Schnitzer, as well as "some limited weight" to Dr. Hayne's opinion.

" 'Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions.' " *Winschel*, 631 F.3d at 1178-79 (quoting 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2)). "There are three tiers of medical opinion sources: (1) treating physicians; (2) nontreating, examining physicians; and (3) nontreating, nonexamining physicians." *Himes v. Comm'r of Soc. Sec.*, 585 F. App'x 758, 762 (11th Cir. Sept. 26, 2014) (per curiam) (unpublished) (citing 20 C.F.R. §§ 404.1527(c)(1)-(2), 416.927(c)(1)-(2)). "In assessing medical opinions, the ALJ must consider a number of

factors in determining how much weight to give to each medical opinion, including (1) whether the physician has examined the claimant; (2) the length, nature, and extent of a treating physician's relationship with the claimant; (3) the medical evidence and explanation supporting the physician's opinion; (4) how consistent the physician's opinion is with the record as a whole; and (5) the physician's specialization. These factors apply to both examining and non-examining physicians." *Eyre v. Comm'r, Soc. Sec. Admin.*, 586 F. App'x 521, 523 (11th Cir. Sept. 30, 2014) (per curiam) (unpublished) (internal citations and quotation marks omitted) (citing 20 C.F.R. §§ 404.1527(c) & (e), 416.927(c) & (e)).

"A 'treating source' (i.e., a treating physician) is a claimant's 'own physician, psychologist, or other acceptable medical source who provides[], or has provided[],[ the claimant] with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant].'" *Nyberg v. Comm'r of Soc. Sec.*, 179 F. App'x 589, 591 (11th Cir. May 2, 2006) (per curiam) (unpublished) (quoting 20 C.F.R. § 404.1502). "Absent 'good cause,' an ALJ is to give the medical opinions of treating physicians 'substantial or considerable weight.'" *Winschel*, 631 F.3d at 1179 (quoting *Lewis*, 125 F.3d at 1440). While noting that Dr. Schnitzer's opinion "was offered prior to the claimant's date last insured and even alleged onset date[,]" the ALJ nevertheless found that the opinion was "largely consistent with the medical evidence" (but "extensively inconsistent with the allegations of the claimant"), noting that "there is no treatment from [the time of Dr. Schnitzer's opinion] through the date last insured that contradicts the[] limitations" in the opinion (R. 105). *See Jarrett v. Comm'r of Soc. Sec.*, 422 F. App'x 869, 873 (11th Cir. Apr. 11, 2011) (per curiam) (unpublished) ("Generally,

10

the more consistent a physician's opinion is with the record as a whole, the more weight an ALJ should place on that opinion." (citing 20 C.F.R. § 404.1527(d)(4), now at § 404.1527(c)(4) (effective Aug. 24, 2012)). *But see Winschel*, 631 F.3d at 1179 (good cause exists to disregard a treating physician's opinion when it is not bolstered by the evidence, or when evidence supports a contrary finding). Thus, the ALJ did not err in assigning significant weight to Dr. Schnitzer's opinion.

The ALJ also did not err in accepting Dr. Schnitzer's opinion over that of non-examiner Dr. Hayne, as "the report of a non-examining doctor is accorded little weight if it contradicts an examining doctor's report; such a report, standing alone, cannot constitute substantial evidence." *Edwards v. Sullivan*, 937 F.2d 580, 584 (11th Cir. 1991) (citing *Spencer on behalf of Spencer v. Heckler*, 765 F.2d 1090, 1093-94 (11th Cir. 1985) (per curiam)).[7] Stokes argues that Dr. Schnitzer's opinion "only encompassed [Stokes]'s workmen's compensation impairment of cervical discectomy" (Doc. 12 at 4) and did not account for his complaints of back pain, which Dr. Hayne did discuss. However, in formulating his proposed RFC, Dr. Hayne considered only Stokes's "Two Level Cervical Fusion with neck pain" and did not factor any limitations from back pain into the opinion. (R. 636). Indeed, Dr. Hayne noted that there was no medical evidence of record "present in the file to allow establishing an MDI for low back pain in 2000 or before the expired" date last insured. (R. 637. *See also* R. 636 ("We have no MER of detail to address his back pain and any L/S MDI from this time period based on the evidence we do have in file.").

At oral argument, counsel for Stokes further suggested that Dr. Schnitzer's

---

[7] Stokes does not dispute the ALJ's assignment of "treating source" status to Dr. Schnitzer's opinions, and they are indisputably examining source opinions.

opinion was unreliable because the record evidence indicates Stokes continued to receive treatment from Coastal Neurological Institute, first from Dr. Schnitzer and then from Drs. Troy Middleton and Patricia Boltz, for over a year after Dr. Schnitzer issued his opinion on April 12, 2000 (R. 631). Without citing to any specific examples in the record in support, counsel suggested that the Court infer from this that Stokes's impairments worsened after Dr. Schnitzer issued his opinion. However, the ALJ noted that he had considered, *inter alia*, all record medical evidence from CNI (*see* R. 104 (citing SSA Exs. 7F, 8F, and 9F [R. 605 – 632])), as well as Dr. Hayne's summary of that evidence (*see* R.104 (citing SSA Ex. 11F [R. 635 – 637])) before finding Dr. Schnitzer's opinions "largely consistent with the medical evidence" (R. 105), suggesting that, in the ALJ's judgment, the additional treatment notes did not show a worsening of Stokes's limitations. Stokes has cited nothing in the record that contradicts that judgment, and substantial evidence supports that determination, given that Stokes was discharged from treatment at CNI for failing to adhere to the prescribed treatment regiment, including "not following the pain contract, missing appointments," and "taking narcotics as he pleaded…" (R. 104 (quotation marks omitted)). *See Crawford*, 363 F.3d at 1159 ("the fact that Crawford repeatedly had declined medication that Dr. Ruiz had prescribed him" was relevant factor in the ALJs decision to discount treating physician's opinion (citing *Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988) (failure to follow prescribed medical treatment will preclude a finding of disability))).

The complicating factor in this case, as the ALJ noted, is that there is simply no medical evidence from between June 30, 2005, Stokes's alleged disability onset date, and December 31, 2006, his date last insured. While "the ALJ has a basic duty to

12

develop a full and fair record[,]" a "claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." *E.g., Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). Stokes does not assert that there is any additional evidence that the ALJ should have made efforts to obtain but did not, and substantial evidence, particularly the opinions of a treating physician accorded significant weight, supports the ALJ's RFC determination.

Accordingly, the Court **OVERRULES** Stokes's assertions of error in Claim 1.

### B.   Claim 2

In his second claim of error, Stokes asserts that the ALJ "reversibly erred in violation of Social Security Ruling 96-8p in failing to separately assess each exertional function when delineating the Plaintiff's residual functional capacity."[8] (Doc. 12 at 6). SSR 96-8p provides, in relevant part: "The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 CFR 404.1545 and 416.945. Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." SSR 96-8p, 61 Fed. Reg. 34474, 1996 WL 374184 (July 2, 1996). In turn, 20 C.F.R. § 404.1545(b) provides: "When we assess your physical abilities, we first assess the nature and extent of your physical limitations and then determine your residual functional capacity for work activity on a regular and continuing basis. A limited ability

---

[8] " 'Social Security Rulings are agency rulings published under the authority of the Commissioner of Social Security and are binding on all components of the Administration.' *Sullivan v. Zebley*, 493 U.S. 521, 531 n.9, 110 S. Ct. 885, 891 n.9, 107 L. Ed. 2d 967 (1990) (internal quotations omitted). Although SSA rulings are not binding on this Court, we accord the rulings deference. *See Fair v. Shalala*, 37 F.3d 1466, 1468–69 (11th Cir. 1994)." *De Olazabal v. Soc. Sec. Admin., Com'r*, 579 F. App'x 827, 832 (11th Cir. Sept. 4, 2014) (per curiam) (unpublished).

to perform certain physical demands of work activity, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching), may reduce your ability to do past work and other work."[9]

Stokes contends the ALJ's statement in the RFC that Stokes would have "occasional postural and manipulative limitations" (R. 103) is insufficient. "By grouping together any postural and manipulative limitations," he argues, the ALJ did not follow SSR 96-8p's requirement "to state a function-by-function assessment of the Plaintiff's ability to do postural and manipulative activities[,]" resulting in an "overly broad" RFC that "does not adequately depict Plaintiff's postural or manipulative limitations." (Doc. 12 at 5 – 6). In sum, Stokes contends that the ALJ did not sufficiently "show his work" under SSR 96-8p and that this amounts to an error of law mandating reversal.

"The ALJ has a duty to make clear the weight accorded to each item of evidence and the reasons for the decision so that a reviewing court will be able to determine whether the ultimate decision is based on substantial evidence." *Freeman v. Barnhart*, 220 F. App'x 957, 959-60 (11th Cir. Mar. 23, 2007) (per curiam) (unpublished) (citing *Cowart v. Schweiker,* 662 F.2d 731, 735 (11th Cir. 1981)). Nevertheless, the Eleventh Circuit has repeatedly rejected similar claims that an ALJ's failure to perform an explicit function-by-function assessment under SSR 96-8p is an error of law mandating reversal, so long as the ALJ's decision sufficiently indicates that he or she considered

---

[9] Stokes does not argue any error as to functions covered by § 404.1545(c) (mental activities) or (d) ("other work-related abilities" affected by certain medically determinable impairments).

14

all relevant evidence in arriving at an RFC determination. *See id.* ("Freeman contends that the ALJ failed to identify her functional limitations and work-related abilities on a function-by-function basis … While the ALJ could have been more specific and explicit in his findings, he did consider all of the evidence and found that it did not support the level of disability Freeman claimed. Only after he determined that she failed to carry her burden of showing that she had become disabled from performing any of her work-related activities did he state that she could perform light exertional activity. Therefore, the ALJ complied with SSR 96–8p by considering Freeman's functional limitations and restrictions and, only after he found none, proceeding to express her residual functional limitations in terms of exertional levels. Furthermore, the ALJ's analysis of the evidence and statement that Freeman could perform light work indicated how much work-related activity she could perform because 'light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8–hour workday.' SSR 83–10."); *Castel v. Comm'r of Soc. Sec.*, 355 F. App'x 260, 263 (11th Cir. Nov. 30, 2009) ("Castel argues that the ALJ reached an RFC determination without going through a function-by-function analysis. Specifically, Castel claims that the ALJ did not perform the function-by-function analysis to determine Castel's ability to handle strength demands. This argument is unfounded. []The ALJ made a determination of Castel's RFC at step four of the function-by-function analysis. The ALJ considered two disability examiners' reports, Castel's testimony, and two Disability Determination Services' ('DDS') reports in arriving at Castel's RFC. *See* SSR 96–8p … (advising that the RFC assessment must consider all relevant evidence, including medical history, medical evaluations, daily activities, and lay evidence). The ALJ

ultimately decided that Castel was capable of medium exertion level work and thus was capable of performing past relevant work … We do not require the ALJ to 'specifically refer to every piece of evidence in his decision,' so long as the decision is sufficient to allow us to conclude that the ALJ considered the claimant's medical condition as a whole. *Dyer v. Barnhart,* 395 F.3d 1206, 1211 (11th Cir. 2005) (per curiam). The ALJ found that the medium level work determination was consistent with the medical evidence and found Castel's RFC to be at a medium level of work. The ALJ performed a proper RFC function analysis, based on substantial evidence, and we shall defer to his conclusions."); *Carson v. Comm'r of Soc. Sec.,* 440 F. App'x 863, 864 (11th Cir. Sept. 21, 2011) (per curiam) (unpublished) ("Following [SSR 96-8p's 'function-by-function'] rubric, the ALJ fully discussed and evaluated the medical evidence, Mr. Carson's testimony, and the effect each impairment has on his daily activities. []While, the ALJ did not specifically refer to Mr. Carson's ability to walk or stand, the ALJ did limit Mr. Carson's exertional level of work to 'light work.' 'Light work' by definition limits the amount an individual can walk or stand for approximately six hours in an eight-hour work day. *See* SSR 83–10, 1983 WL 31251 (S.S.A.). Furthermore, the ALJ's thorough evaluation of Mr. Carson's case led the ALJ to adopt additional limitations to Mr. Carson's ability to perform light work.  Simply because the ALJ chose not to adopt further limitations on Mr. Carson's ability to walk or stand, does not mean the ALJ did not properly consider the alleged limitations.").

Other circuits have also rejected the contention that an ALJ's failure to perform an explicit function-by-function assessment under SSR 96-8p is reversible error in itself. *See Cichocki v. Astrue,* 729 F.3d 172, 177 (2d Cir. 2013) ("Where an ALJ's

analysis at Step Four regarding a claimant's functional limitations and restrictions affords an adequate basis for meaningful judicial review, applies the proper legal standards, and is supported by substantial evidence such that additional analysis would be unnecessary or superfluous, we agree with our sister Circuits that remand is not necessary merely because an explicit function-by-function analysis was not performed." (citing *Zatz v. Astrue*, 346 F. App'x 107, 111 (7th Cir. Oct. 5, 2009) (per curiam) (unpublished); *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005); *Depover v. Barnhart*, 349 F.3d 563, 567–68 (8th Cir. 2003); *Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 547 (6th Cir. Mar. 4, 2002) (per curiam) (unpublished)); *Chavez v. Astrue*, 276 F. App'x 627, 627-28 (9th Cir. May 1, 2008) (per curiam) (unpublished) ("Chavez claims that the ALJ committed legal error by determining his mental residual functional capacity without performing a function-by-function assessment as required by Social Security Ruling 96-8p, 1996 WL 374184, at *3 (July 2, 1996). This claim fails because the ALJ considered and noted 'all of the relevant evidence' bearing on Chavez's 'ability to do work-related activities,' as required by the function-by-function analysis. *See* Soc. Sec. Ruling 96-8p, 1996 WL 374184, at *3."); *Hendron v. Colvin*, 767 F.3d 951, 956-57 (10th Cir. 2014) (rejecting claimant's contention that the ALJ's "RFC is not in the proper form" because the ALJ did not "separately discuss and make findings regarding her abilities to sit, stand, walk, lift, carry, push, or pull" (citing *Keyes–Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012) ("Where, as here, we can follow the adjudicator's reasoning in conducting our review, and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal. In conducting our review, we should, indeed must, exercise

common sense.... [W]e cannot insist on technical perfection."))).  *But see Cichocki*, 729 F.3d at 177-78 ("Remand may be appropriate, however, where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review. *See Myers v. Apfel*, 238 F.3d 617, 621 (5th Cir. 2001) (remanding where 'the ALJ failed to resolve the inconsistencies in the evidence' regarding claimant's residual functional capacity).").  The Court in particular agrees with the Second Circuit's rationale in rejecting such a contention:

> We have said more generally (and now repeat) that where we are "unable to fathom the ALJ's rationale in relation to evidence in the record, especially where credibility determinations and inference drawing is required of the ALJ," we will not "hesitate to remand for further findings or a clearer explanation for the decision." *Berry v. Schweiker,* 675 F.2d 464, 469 (2d Cir. 1982). The automatic remand rule urged by [the claimant], however, goes far beyond this sensible practice. … [T]he functions in paragraphs (b), (c), and (d) of 20 CFR §§ 404.1545 and 416.945 are only illustrative of the functions potentially relevant to an RFC assessment. Adopting a *per se* rule that these functions must be explicitly addressed on pain of remand (no matter how irrelevant or uncontested in the circumstances of a particular case) would thus not necessarily ensure that all relevant functions are considered … We decline to adopt a *per se* rule. The relevant inquiry is whether the ALJ applied the correct legal standards and whether the ALJ's determination is supported by substantial evidence.

*Cichocki*, 729 F.3d at 177.

As the Court has already found in overruling Claim 1, the ALJ adequately considered the record evidence in formulating Stokes's RFC at Step Four, and Stokes has made no effort in Claim 2 to identify contradictory record evidence or otherwise show that the RFC is not supported by substantial evidence.  Thus, to the extent the ALJ could have set forth a more detailed "function-by-function analysis," the ALJ committed no reversible error in failing to do so.  Stokes also asserts the ALJ's RFC "is

overly broad and does not adequately depict [his] postural or manipulative limitations." Assuming without deciding that the ALJ's opinion initial statement assigning "occasional postural and manipulative limitations" (R. 103) was improper lumping of those limitations, the opinion later clarifies that Stokes "would have an occasional limitation in **each of** the postural and manipulative limitations" (R. 105 (emphasis added)), which adequately conveys the ALJ's determination that he assigned occasional limitation to each separate manipulative and postural function.[10]  *Cf. Shanks v. Colvin*, No. 2:13-CV-1770-SLB, 2014 WL 6608153, at *7 (N.D. Ala. Nov. 20, 2014) (Blackburn, J.) ("[S]everal courts have recognized an ALJ's use of the term 'postural activities' to generally mean bending, climbing, kneeling, stooping, crouching, balancing, and crawling … The court finds no error in the ALJ's use of the term 'postural activities.' Additionally, the ALJ's assessment that plaintiff should avoid 'exposure to hazards' was sufficiently specific to indicate plaintiff's limitations." (citing cases)).

Accordingly, the Court **OVERRULES** Stokes's assertions of error in Claim 2 and finds that the Commissioner's final decision is due to be **AFFIRMED**.

---

[10] After formulating Stokes's RFC, the ALJ determined that Stokes was capable of performing past relevant work as a welder/fitter (R. 105), which would normally mean that an ALJ need not proceed to Step Five before making a determination of "not disabled." Only as an alternative did the ALJ proceed to Step Five and determined, after consulting a vocational expert, that there existed significant numbers of jobs in the national economy that Stokes could perform (R. 106 – 107). Even assuming, without deciding, that the ALJ's hypothetical to the vocation expert describing Stokes's RFC as containing "occasional postural limitations, occasional manipulative limitations" (R. 134) was impermissibly broad, *see Winschel*, 631 F.3d at 1180 ("In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." (quotation omitted)), Stokes challenges neither of these determinations on judicial review, and at the very least the Court finds no reason to question *sua sponte* the ALJ's determination that Stokes was capable of performing past relevant work.

## V.     Conclusion

In accordance with the foregoing analysis, it is **ORDERED** that the Commissioner's final decision issued October 31, 2014, denying Stokes's application for DIB benefits is **AFFIRMED** under 42 U.S.C. § 405(g).

Final judgment shall issue separately in accordance with this Order and Federal Rule of Civil Procedure 58.

**DONE** and **ORDERED** this the 26th day of January 2016.

>  */s/ Katherine P. Nelson*
> **KATHERINE P. NELSON**
> **UNITED STATES MAGISTRATE JUDGE**